1
2
3
4
5
6
7
8          **IN THE UNITED STATES DISTRICT COURT**

9          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   PROGRESSIVE CASUALTY                    CASE NO. CV F 06-1113 LJO SMS
     INSURANCE CO.,
12                                           **SUMMARY JUDGMENT DECISION**
                      Plaintiff,             _____(Docs. 10, 18.)
13          vs.

14   PEERLESS INSURANCE CO.,

15                    Defendants.
                                        /
16   _____

17                              **INTRODUCTION**

18          In this insurance coverage action, plaintiff Progressive Casualty Insurance Company

19   ("Progressive") and defendant Peerless Insurance Company ("Peerless") seek this Court's determination

20   whether they are co-primary insurers or whether Peerless is an excess insurer for an underlying fatality

21   involving tractor insured by Progressive and a trailer insured by Peerless.  This Court considered the

22   parties' summary judgment motions on the record and without oral argument or a hearing, pursuant to

23   this Court's Local Rule 78-230(h).[1]  For the reasons discussed below, this Court GRANTS Peerless

24   summary judgment that its policy is excess over Progressive's policy.

25   _____

26          [1]      This Court carefully reviewed and considered all arguments, points and authorities, declarations,
     depositions, exhibits, statements of undisputed facts and responses thereto, objections and other papers filed by the parties.
27   Omission of reference to an argument, document, paper or objection is not to be construed to the effect that this Court did
     not consider the argument, document, paper or objection.  This Court thoroughly reviewed and considered the evidence it
28   deemed admissible, material and appropriate for summary judgment.

                                              1

**BACKGROUND**

**Insurance Policies, Sub-Haul Agreement And Equipment Lease**

Herbert Simon, dba Simon & Simon ("Mr. Simon"), owned and drove a tractor ("Simon tractor") and was the named insured under a Progressive commercial automobile policy ("Progressive policy"), which covered the Simon tractor and a non-owned trailer.  Kroeker, Inc. ("Kroeker") is a Fresno company which engages in demolition and recycling and maintains a 35-vehicle fleet.  Peerless issued a commercial automobile to Kroeker which covered Kroeker's trailer ("Kroeker trailer") involved in the underlying fatality.  The Progressive policy named Kroeker as an additional insured.  The Peerless policy did not name Mr. Simon as an additional insured.

Kroeker and Mr. Simon entered into a January 1, 2004 subhaul agreement whereby Mr. Simon, as an independent contractor, agreed to transport freight for Kroeker.  The subhaul agreement required Mr. Simon to obtain liability insurance and to indemnify Kroeker:

> Subhauler [Mr. Simon] shall, at his sole cost and expense, carry Property Damage and Personal Liability insurance on his equipment.  Subhauler agrees to have a <u>Certificate of Insurance</u> sent to the Prime Carrier [Kroeker] verifying that fact of coverage on equipment. Subhauler at his own expense shall carry Public Liability with a combined single limit of $7,000,000 each accident as required by law. Subhauler shall Indemnify, Save Harmless, and Defend Prime Carrier against any and all suits, actions, legal proceedings, claims, demands, damages, liabilities, cost or expense in connection with the injury or death of any person or persons and damage to any property arising out of the operations conducted by Subhauler.  It is also agreed that no payment will be made until such <u>Certificate of Insurance</u> naming KROEKER as <u>Additional Insured</u> is furnished. (underlining in original.)

Kroeker, as lessor, and Mr. Simon, as lessee, entered into a January 1, 2004 equipment lease whereby Mr. Simon leased from Kroeker "ANY & ALL EQUIPMENT."  The equipment lease required Mr. Simon to secure liability insurance: "Lessee [Mr. Simon], at his own expense, shall carry adequate public liability insurance against injury, including death, and against property damage . . ."  The equipment lease also required Mr. Simon to indemnify Kroeker:

> Lessee assumes all risk, responsibility and liability arising from the possession, operation and use of the equipment however imposed, including damages for injury and or death to persons and property damage howsoever arising therefrom or because thereof.  Lessee shall indemnify, save and hold harmless from any and all of the following whether the same be actual or alleged: . . . all loss, damage, claims, penalties, fines, liability and expense, including Attorney's fees, howsoever arising or incurred because of said equipment or the storage, maintenance, use, operation or return to lessor thereof.

/ / /

2

**Underlying Fatality And Progressive's Declaratory Relief Claim**

On June 30, 2005, Ryan Dobbs ("Mr. Dobbs") was electrocuted to death when unloading sand from the Kroeker trailer which was attached to the Simon tractor.  The Kroeker trailer contacted electrical lines to cause Mr. Dobbs' electrocution.  Mr. Dobbs' widow pursued an underlying wrongful death action against P, G & E, Mr. Simon and Kroeker in Fresno County Superior Court ("underlying wrongful death action").  Peerless contends that Kroeker leased the Kroeker trailer to Mr. Simon pursuant to the subhaul agreement and equipment lease.  Since the equipment lease refers to no specific vehicles, Progressive "doubts that there was a lease for the trailer involved in the accident."

Progressive refused Peerless' request to defend Kroeker pursuant to the Progressive policy and defense and indemnity provisions in the subhauler agreement and equipment lease.  Progressive filed this action to seek declaratory relief that Peerless is obligated to defend and indemnify Mr. Simon and Kroeker and that Peerless and Progressive share co-primary obligations.

A tentative $1.7 million settlement was reached in the underlying wrongful death action, including contributions of $675,000 by Progressive for Mr. Simon, $350,000 by Peerless for Kroeker, and $350,000 by P, G & E.  Resolution of this action's insurance coverage dispute will determine responsibility for the remaining $325,000.

**Peerless And Progressive's Summary Judgment Motions**

Peerless and Progressive seek summary judgment based on their differing interpretations of California Insurance Code section 11580.9 ("section 11580.9").  In short, Peerless contends that under section 11580.9, its coverage is excess to Progressive's coverage.  Progressive contends that under section 11580.9, Progressive and Peerless are co-primary insurers who share the loss equally ($675,000 each).  Thus, Progressive seeks an order that Peerless pay the remaining $325,000 to complete the tentative settlement total.

**DISCUSSION**

**Prior Section 11580.9(b) Effective At Mr. Dobbs' Death**

At the time of Mr. Dobbs' electrocution, the prior version of section 11580.9(b) ("prior section 11580.9(b)") provided:

(b) Where two or more policies apply to the same loss, and one policy affords

coverage to a named insured **in the business of renting or leasing motor vehicles** without operators, it shall be conclusively presumed that the insurance afforded by that policy to a person other than the named insured or his or her agent or employee, shall be excess over and not concurrent with, any other valid and collectible insurance applicable to the same loss covering the person as a named insured as an additional insured under a policy with limits at least equal to the financial responsibility requirements specified in Section 16056 of the Vehicle Code. The presumption provided by this subdivision shall apply only if, at the time of the loss, the involved motor vehicle:

(1) Qualifies as a "commercial vehicle." For purposes of this subdivision, "commercial vehicle" means a type of vehicle subject to registration or identification under the laws of this state and one of the following:

. . .

(B) Designed, used, or maintained primarily for the transportation of property.

(2) Has been leased for a term of six months or longer. (Bold added.)

Peerless argues that "[s]ince Kroeker leased a commercial vehicle designed for transportation of property to Simon without an operator, the Peerless policy is excess over the Progressive policy." Progressive counters that since Kroeker was not primarily in the business of renting or leasing motor vehicles, prior section 11580.9(b) does not render the Peerless policy as excess. Progressive argues that neither a single nor occasional, incidental motor vehicle lease invokes prior section 11580.9(b), which Progressive claims "was intended to apply only to policies issued to entities engaged primarily in the renting or leasing business."

Recognizing a split of authority among California appellate courts, the Ninth Circuit Court of Appeals certified to the California Supreme Court the question: "What is the appropriate test for determining whether an insured is "engaged in the *business of renting or leasing motor vehicles without operators*" under California Insurance Code § 11580.9(b)?" *Sentry Select Insurance Co. v. Fidelity & Guaranty*, 455 F.3d 956, 956 (9th Cir. 2006) (italics in original). The Ninth Circuit noted that California's second appellate district looks at the insured's primary business purpose to determine whether it is "engaged in the business of" leasing motor vehicles. *Sentry Select*, 455 F.3d at 957 (citing two California appellate cases). The Ninth Circuit further noted that California's first and fifth appellate districts examine the specific transaction to determine the question and that no California Supreme Court decision is on point. *Sentry Select*, 455 F.3d at 957 (citing three California appellate cases).

In the case at hand, the evidence of Kroeker's engaging "in the business of renting or leasing

4

1   motor vehicles without operators" is the subhaul agreement and equipment lease with Mr. Simon.

2   Peerless asks this Court to apply prior section 11580.9(b) to the transaction between Kroeker and Mr.

3   Simon.  Peerless also asks this Court to examine the amended version of section 11580.9(b), effective

4   January 1, 2007.

5   ### Amended Section 11580.9(b)

6   _____In August 2006, the California Legislature amended section 11580.9(b) ("amended section

7   11580.9(b)") to read:

8   > (b) Where two or more policies apply to the same loss, and one policy affords coverage to a named insured **who in the course of his or her business rents or leases**

9   > motor vehicles without operators, it shall be conclusively presumed that the insurance afforded by that policy to a person other than the named insured or his or her agent or

10  > employee, shall be excess over and not concurrent with, any other valid and collectible insurance applicable to the same loss covering the person as a named insured or as an

11  > additional insured . . . (Bold added.)

12  "A statute that merely clarifies, rather than changes, existing law is properly applied to

13  transactions predating its amendment." *Carter v. Calif. Dept. Of Veterans Affairs*, 38 Cal.4th 914, 922,

14  44 Cal.Rptr.3d 223, 229 (2006).  But a statute may not apply retroactively if "it substantially changes

15  the legal consequences of past actions, or upsets expectations based in prior law." *Carter*, 38 Cal.4th

16  at 922, 44 Cal.Rptr.3d at 229.  "Statutes are disfavored as retroactive when their application 'would

17  impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose

18  new duties with respect to transactions already completed.'" *Fernandez-Vargas v. Gonzales*, __ U.S. __,

19  126 S.Ct. 2422, 2427-2428 (2006) (quoting *Landgraf v. USI Films Prods.*, 511 U.S. 244, 280, 114 S.Ct.

20  1483 (1994)).

21  Peerless argues that amended section 11580.9(b) clarifies "that the Legislature was not altering

22  the law, but was simply clarifying the intended effect of the statute."  Peerless points to an Assembly

23  Committee on Insurance summary which indicates that amended section 11580.9(b) "[c]larifies that a

24  policy covering an insured who in the course of his or her business rents or leases motor vehicles for

25  either commercial purposes or for at least a six-month term **is considered excess** to other insurance

26  / / /

27  / / /

28  / / /

1  policies covering the same loss." (Bold added.)[2]  According to Peerless, prior section 11580.9(b) "could

2  be interpreted in a manner consistent with" amended section 11580.9(b).

3       Progressive argues that amended section 11580.9(b) makes a substantive change to preclude

4  retroactive application.  Progressive notes that amended section 11580.9(b) requires that the insured only

5  conduct leasing or renting vehicles in the course of its business and not be in the business of leasing and

6  renting vehicles, as prior section 11580.9(b) required.   According to Progressive, such change

7  presumably "means that leasing will no longer need to be a primary business of the insured."

8       This Court is more persuaded by Peerless' evaluation of amended section 11580.9(b) that the

9  Legislature recognized a split in judicial interpretation, not a substantive law change, and clarified the

10  correct interpretation.  This Court agrees with Peerless that the Legislature clarified section 11580.9(b)'s

11  original intent by replacing the ambiguous "named insured engaged in the course of business" with

12  "named insured who in the course of his or her business."  The Legislative Counsel's Digest for the

13  Assembly Bill to amend section 11580.9(b) provides insight to Peerless:

14          Existing law provides that where 2 or more insurance policies apply to the same
loss and one policy affords coverage to a named insured **engaged in the business of**

15  **renting or leasing motor vehicles without operators**, it is conclusively presumed,
subject to specified conditions, that the policy to the named insured shall be excess to the

16  other valid and collectible insurance policy.

17          This bill would instead provide that where 2 or more insurance policies apply to
the same loss and one policy affords coverage to a named insured **who in the course of**

18  **his or her business rents or leases motor vehicles without operators**, it is conclusively
presumed, subject to specified conditions, that the policy to the named insured shall be

19  excess to the other valid and collectible insurance policy.

20  Legislative Counsel's Digest (2005-2006), Chapter 345.

21       Progressive fails to demonstrate that amended section 11580.9(b) is more than clarification and

22  substantially changes legal consequences of past actions or upsets expectations based in prior law to

23  preclude retroactive application of amended section 11580.9(b).  In connection with its business,

24  Kroeker leased the Kroeker trailer without an operator to Mr. Simon.  In his declaration, Kroeker

25  secretary Jeff Kroeker notes that at the time of Mr. Dobbs' electrocution, "Mr. Simon had possession

26  

27        [2]   Peerless also points to an Assembly Committee on Insurance report that amended section 11580.9(b) "is
necessary to avoid uncertainty and unnecessary litigation in these cases, and to restore legislative intent after several
conflicting court decisions."  Ass. Comm. on Ins., Analysis of Ass. Bill No. 1909 (2005-2006 Reg. Sess) as introduced

28  January 26, 2006.

of the Kroeker trailer pursuant to the Sub-Haul Agreement and the Equipment Lease." Progressive acknowledges that it was aware that its insured, Mr. Simon, "might lease or borrow dump trailers from trucking companies" and so based its premiums. Under its policy's declarations, Progressive covered an unidentified trailer. As such, under prior or amended section 11580.9(b), Kroeker's Peerless policy is excess to Mr. Simon's Progressive policy.

Peerless' position is further bolstered by the Legislative declaration of California Insurance Code section 11580.8:

> The Legislature declares it to be the public policy of this state to avoid so far as possible conflicts and litigation, with resulting court congestion, between and among injured parties, insureds, and insurers concerning which, among various policies of liability insurance and the various coverages therein, are responsible as primary, excess, or sole coverage, and to what extent, under the circumstances of any given event involving death or injury to persons or property caused by the operation or use of a motor vehicle.

Peerless correctly notes that "Section 11580.9(b) should be interpreted in the manner that would be most effective in reducing litigation." Progressive's interpretation of section 11580.9 would promote litigation between wouldbe co-primary insurers and as to what constitutes engaging in the business of renting or leasing motor vehicles. Peerless' interpretation offers more of a bright line to decrease litigation and promote the public policy codified in California Insurance Code section 11580.8.

**Motor Vehicle**

Peerless and Progressive agree that if neither prior nor amended section 11580.9(b) applies, section 11580.9(d) applies. Section 11580.9(d) has not been amended since Mr. Dobbs' electrocution and states:

> (d) Except as provided in subdivisions (a), (b), and (c), where two or more policies affording valid and collectible liability insurance apply to the same motor vehicle or vehicles in an occurrence out of which a liability loss shall arise, it shall be conclusively presumed that the insurance afforded by that policy **in which the motor vehicle is described or rated** as an owned automobile shall be primary and the insurance afforded by any other policy or policies shall be excess. (Bold added.)

Peerless and Progressive disagree as to application of a motor vehicle in a tractor-trailer case. Peerless contends that since it insured, and its policy rates or describes, only the Kroeker trailer, its insurance is excess under section 11580.9(d). Peerless notes that the Simon tractor does not appear on its policy's declarations and that it charged no additional premium for the Simon tractor. Peerless argues that

7

Progressive rated or described the tractor-trailer rig on its policy and charged Mr. Simon additional premium for "unidentified, non-owned trailers."  Progressive argues that since the motor vehicle here comprised the Simon tractor **and** the Kroeker trailer, the Progressive and Peerless policies are pro-rated. Progressive further argues that since Progressive and Peerless "rated or described one portion of the rig as an owned auto, the loss must be pro-rated."

Unfortunately, California courts are split on section 11580.9(d) interpretation with some courts holding that a policy covering either the tractor or trailer is co-primary with another policy covering the tractor or trailer.  Other California courts held that "motor vehicle" under section 11580.9(d) includes the trailer.

As noted by Peerless, to address the split, the California Legislature in August 2006 added subsection (h) to section 11580.9 and which provides:

> (h) Notwithstanding subdivision (b), when two or more policies affording valid and collectible automobile liability insurance apply to a power unit and an attached trailer or trailers in an occurrence out of which a liability loss shall arise, and one policy affords coverage to a named insured in the business of a trucker, defined as any person or organization engaged in the business of transporting property by auto for hire, then the following shall be conclusively presumed: If at the time of the loss, the power unit is being operated by any person in the business of a trucker, the **insurance afforded** by the policy to the person engaged in the business of a **trucker shall be primary** for both power unit and trailer or trailers, and the insurance afforded by the other policy shall be excess.  (Bold added.)

Peerless contends that section 11580.9(h) was added to clarify amended section 11580.9(d).  Peerless points to a Senate committee report that states that August 2006 amendments "clarify which of two policies pays for losses arising from a trucking accident in which there is one insurance policy on the power unit and a [different] policy or policies on the trailer(s) involved in the accident" and that "the insurance policy covering the power unit pays first, and that the insurance policy and policies covering the trailer(s) pays second."[3]  Sen. Banking, Fin., and Ins. Comm., Analysis fo Ass. Bill No. 1909 (2005-2006 Reg. Sess.), as amended Aug. 7, 2006.  The committee report further explained that the subject Assembly Bill No. 1909 "eliminates the ambiguities in existing law surrounding primary and excess

---

[3]    In *Maben v. Superior Court*, 255 Cal.App.2d 708, 713, 63 Cal.Rptr. 439, 442 (1967), the court explained that statements in legislative committee reports "concerning the statutory objects and purposes, which are in accord with a reasonable interpretation of the statute, will be followed by the courts.  And it will be presumed that the Legislature adopted the proposed legislation with the intent and meaning expressed in committee reports."  (citation omitted.)

coverage of rented or leased commercial vehicles, thus eliminating coverage to pay damages to the injured party." Sen. Banking, Fin., and Ins. Comm., Analysis of Ass. Bill No. 1909 (2005-2006 Reg. Sess.), as amended Aug. 7, 2006. Legislative history also notes that "when a trucking accident occurs and there is one insurance policy covering the power unit it shall be considered primary, and the insurance policy or policies covering the trailer or trailers shall be excess." Ass. Floor Analysis, Analysis of Ass. Bill No. 1909 (2005-2006 Reg. Sess.), as amended Aug. 7, 2006.

If courts have not finally and conclusively interpreted a statue, "a declaration of a later Legislature as to what an earlier Legislature intended is entitled to consideration." *McClong v. Employment Development Dept.*, 34 Cal.4th 467, 473, 20 Cal.Rptr.3d 428 (2004). "[A] subsequent expression of the Legislature as to the intent of the prior statute, although not binding on the court, may properly be used in determining the effect of a prior act." *Calif. Emp. etc. Com. v. Payne*, 31 Cal.2d 210, 213-214, 187 P.2d 702 (1947).

Section 11580.9(h) serves as guidance for this Court. Mr. Simon was in the business of a trucker when he operated the power unit (Simon tractor) at the time of Mr. Dobbs' electrocution. The Peerless policy's declarations did not list the Simon tractor. Peerless charged no additional premium to insure the Simon tractor. The Progressive policy's declaration included a non-owned trailer to cover the Kroeker trailer for which Progressive charged Mr. Simon an additional premium. With support from section 11580.9(h), the Peerless policy is excess.

### Other Insurance Provisions

Peerless contends that "other insurance" provisions in the Peerless and Progressive policies demonstrate that Peerless policy is excess coverage. The Peerless policy's "other insurance" provision states:

> a. For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, **while a covered "auto" which is a "trailer" is connected to another vehicle, the Liability Coverage this Coverage Form provides for the "trailer" is:**
>
> **(1) Excess while it is connected to a motor vehicle you do not own.** (Bold added.)

The Progressive policy's "other insurance provision" provides: "This coverage is primary when **your**

1    **insured auto** which is a **trailer** is attached to an **insured auto you** own and is excess while attached

2    to a motor vehicle **you** do not own." (Bold in original.)  The Progressive policy defines **"Your insured**

3    **auto"** or **"insured auto"** as "[a]ny **auto** described in the Declarations or any **replacement auto** . . ."

4    and "**Trailers** designed primarily for travel on public roads, even if such **trailers** are not shown in the

5    Declarations, but only while upon a public road and connected to **your insured auto** . . ." (Bold in

6    original.)

7        Peerless notes that the Progressive policy's declarations describe a non-owned trailer without a

8    vehicle identification number and that Kroeker has an additional interest in the trailer.  Since Kroeker

9    leased different trailers to Mr. Simon, who agreed to obtain insurance for them, Peerless concludes that

10   the Kroeker trailer qualifies as a "non-owned" trailer described in the Progressive policy's declarations.

11   Peerless further contends that the Progressive policy states an intent to be primary coverage and the

12   Peerless policy indicates an intent to be excess coverage.  Progressive argues that section 11580.9 trumps

13   the other "other insurance" provisions in the policies.

14       As noted above, interpretation of section 11580.9, not the "other insurance" provisions,

15   determines this dispute.  Nonetheless, Peerless' "other insurance" arguments bolsters its position.

16                    **Indemnity And Insurance Procurement Provisions**

17       Based on the indemnity and insurance procurement provisions in the subhaul agreement and

18   equipment lease, Peerless argues that Mr. Simon and Kroeker intended that Mr. Simon "would primarily

19   be responsible for personal injury liability arising from Simon's operations."  Peerless claims that if the

20   Peerless policy is primary, the defense and indemnity agreements between Mr. Simon and Kroeker

21   "would be effectively negated."  Progressive responds that the indemnity provisions, which Peerless and

22   Progressive did not sign, cannot defeat section 11580.9's presumptions.

23       Progressive is correct.  Section 11580.9(f) provides:

24           The presumptions stated in subdivisions (a) to (d), inclusive, may be modified or
             amended only by written agreement signed by all insurers who have issued a policy or
25           policies applicable to a loss described in these subdivisions and all named insureds under
             these policies.
26

27   Section 11580.9(f) "requires insurers to sign a written agreement before their relationships can be

28   altered."  *Mission Ins. Co. v. Hartford Ins. Co.*, 155 Cal.App.3d 1199, 1215, 202 Cal.Rptr. 635, 645

                                                    10

1  (1984) (subhaul agreement was inadequate to change or modify conclusive presumption of section

2  11580.9(d) because it was not signed by insurers).  Neither Peerless nor Progressive signed the subhaul

3  agreement and equipment lease to preclude the agreement and lease to modify the insurers' relationships

4  under section 11580.9.

5  <u>**CONCLUSION AND ORDER**</u>

6       For the reasons discussed above, this Court:

7      1.    GRANTS Peerless summary judgment that its policy is excess over the Progressive

8          policy;

9      2.    DENIES Progressive summary judgment;

10     3.    DIRECTS this Court's clerk to enter judgment in favor of defendant Peerless Insurance

11         Company and against plaintiff Progressive Casualty Insurance Company; and

12     4.    VACATES all pending dates, including May 24, 2007 pretrial conference and July 5,

13         2007 trial.

14      IT IS SO ORDERED.

15 **Dated:**   **March 8, 2007**              **/s/ Lawrence J. O'Neill**

16 66h44d                          UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26

27

28