IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PROGRESSIVE CASUALTY INSURANCE COMPANY,<br><br>        Plaintiff,<br><br>  vs.<br><br>PEERLESS INSURANCE COMPANY,<br><br>        Defendant.<br>_____/ | CASE NO. CV F 06-1113 LJO SMS<br><br>**ORDER ON DEFENDANT'S MOTION FOR DEFENSE COSTS**<br>(Doc. 36.) |

**INTRODUCTION**

In this insurance coverage action, defendant Peerless Insurance Company ("Peerless") seeks $62,885.05 from plaintiff Progressive Casualty Insurance Company ("Progressive") for costs which Peerless paid to defend an insured in an underlying action. This Court considered Peerless' motion to recover its defense costs on record and VACATES the June 18, 2007 hearing, pursuant to Local Rule 78-230(h). For the reasons discussed above, this Court GRANTS Peerless' motion to recover defense costs.

/ / /

/ / /

1

# BACKGROUND

## Insurance Policies

Herbert Simon, dba Simon & Simon ("Mr. Simon"), owned and drove a tractor ("Simon tractor") and was the named insured under a Progressive commercial automobile policy ("Progressive policy"), which covered the Simon tractor and a non-owned trailer. Kroeker, Inc. ("Kroeker") is a Fresno company which engages in demolition and recycling and maintains a 35-vehicle fleet. Peerless issued a commercial automobile to Kroeker which covered Kroeker's trailer ("Kroeker trailer") involved in the underlying fatality. The Progressive policy named Kroeker as an additional insured. The Peerless policy did not name Mr. Simon as an additional insured.

## Underlying Fatality And Progressive's Declaratory Relief Claim

On June 30, 2005, Ryan Dobbs ("Mr. Dobbs") was electrocuted to death when unloading sand from the Kroeker trailer which was attached to the Simon tractor. The Kroeker trailer contacted electrical lines to cause Mr. Dobbs' electrocution. Mr. Dobbs' widow pursued an underlying wrongful death action against P, G & E, Mr. Simon and Kroeker in Fresno County Superior Court ("underlying wrongful death action").

In September 2005, Peerless tendered to Progressive defense and indemnity of Kroeker for the underlying wrongful death action. In January 2006, Progressive refused Peerless' request to defend and indemnify Kroeker on grounds that Progressive and Peerless were co-primary insurers. A settlement was reached in the underlying wrongful death action, including contributions from Progressive, Peerless and P, G & E. Peerless claims that it incurred $62,885.05 in legal expenses to defend Kroeker in the underlying wrongful death action.

Progressive filed this action to seek declaratory relief that Peerless is obligated to defend and indemnify Mr. Simon and Kroeker and that Peerless and Progressive share co-primary obligations.

## Peerless And Progressive's Summary Judgment Motions

Peerless and Progressive sought summary judgment based on their differing interpretations of California Insurance Code section 11580.9 ("section 11580.9"), which addresses multiple insurance policies for a tractor and trailer. In short, Peerless contended that under section 11580.9, its coverage is excess to Progressive's coverage. Progressive contended that under section 11580.9, Progressive and

Peerless were co-primary insurers to share equally a portion of settlement of the underlying wrongful death action. This Court's March 9, 2007 order ("March 9 order") granted Peerless summary judgment and determined that Peerless' policy was excess and that Progressive and Peerless were not co-primary insurers for the underlying wrongful death action.

### Peerless' Requests For Defense Costs[1]

Peerless' April 12, 2007 e-mail requested Progressive to reimburse Peerless' defense costs incurred in the underlying wrongful death action and advised that Peerless would seek such relief from this Court if the matter was not resolved within 30 days. In the absence of Progressive's response, Peerless followed up with April 18 and 24, 2007 and May 3, 2007 letters to Progressive to reiterate that Peerless would seek this Court's intervention on reimbursement if the issue was not resolved prior to May 11, 2007. Progressive's May 4, 2007 e-mail indicated it would get back to Peerless early the next week. Peerless' May 10, 2007 e-mail again requested Progressive for reimbursement. Progressive responded with its hope to respond soon. Peerless contends that Progressive has provided no substantive response to Peerless' reimbursement request.

On May 18, 2007, Peerless filed this motion to recover from Progressive Peerless' costs to defend Kroeker in the underlying wrongful death action.

## DISCUSSION

### Retained Jurisdiction

Peerless contends that since the March 9 order was a declaratory judgment, this Court retains jurisdiction to determine the reimbursement issue under 28 U.S.C. § 2202, which provides:

> Further necessary or **proper relief** based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment. (Bold added.)

Peerless equates its reimbursement request as "proper relief." Progressive does not challenge that this Court is empowered to provide further relief under 28 U.S.C. § 2202.

Under 28 U.S.C. § 2202, the court retains jurisdiction to enter such further orders as it deems necessary or proper to give complete and effectual relief consistent with its declaratory judgment.

---

[1] The communications addressed below were by Peerless and Progressive's counsel.

1  *Rincon Band of Mission Indians v. Harris*, 618 F.2d 569, 575 (9th Cir.1980); *Omaha Indemn. Ins. Co.
2  v. Cardon Oil Co.*, 687 F.Supp. 502, 503 (N.D. Cal. 1988) (insurer's motion for reimbursement of
3  defense costs is "proper relief" following declaratory order that insurer had no duty to defend).  The
4  matter of defense costs falls under the scope of 28 U.S.C. § 2202 and determination of such matter is
5  necessary and proper to give complete, effectual relief consistent with the March 9 order.

**Reimbursement Of Defense Costs**

7  A primary insurer has a primary duty to indemnify and to defend the insured for a covered risk.
8  *See Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 65 Cal.App.4th 1279, 1297, 1304, 77 Cal.Rptr.2d
9  296, 306, 311 (1998).  Excess insurance is invoked after underlying coverage is exhausted.  *See Wells
10 Fargo Bank, N.A. v. California Ins. Guar. Ass'n*, 38 Cal.App.4th 936, 940, n. 2, 45 Cal.Rptr.2d 537,
11 539, n. 2 (1995).  "An excess policy is one where no insurance obligation or defense duty attaches until
12 the insurance limits for an underlying policy are exhausted."  *Maryland Casualty Co. v. Nationwide
13 Mutual Ins. Co.*, 81 Cal.App.4th 1082, 1093, 97 Cal.Rptr.2d 374, 380 (2000).

14 According to Peerless, Progressive's policy limits were not exhausted when Progressive
15 contributed to settlement of the underlying wrongful death action in March 2007.  As such, Peerless
16 contends that Progressive is responsible for Peerless' defense costs.  Progressive responds that "it has
17 no obligation to reimburse Peerless for the cost of defending Kroeker against claims which were covered
18 under the Peerless policy, but were not covered under the Progressive policy."

*Equitable Subrogation*

20 Peerless argues that the doctrine of equitable subrogation permits an excess insurer to recover
21 reimbursement of defense costs from a primary insurer.  California courts have explained application
22 of equitable subrogation in the insurance context:

> In the case of insurance, subrogation takes the form of an insurer's right to be put in the position of the insured in order to pursue recovery from third parties legally responsible to the insured for a loss which the insurer has both insured and paid. . . . The subrogated insurer is said to "'stand in the shoes'" of its insured, because it has no greater rights than the insured and is subject to the same defenses assertable against the insured. . . .
>
> In short, "[e]quitable subrogation allows an insurer that paid coverage or defense costs to be placed in the insured's position to pursue a full recovery from another insurer who was primarily responsible for the loss. . . . This doctrine commonly applies to shift defense costs between primary and excess insurers."

*Travelers Cas. and Surety Co. v. American Equity Ins. Co.*, 93 Cal.App.4th 1142, 1151-1152, 113 Cal. Rptr.2d 613, 619, 620 (2001) (quoting *Fireman's Fund*, 65 Cal.App.4th at 1291-1292, 77 Cal.Rptr.2d 296 and *Maryland Casualty*, 81 Cal.App.4th at 1088, 97 Cal.Rptr.2d at 377 ("Thus, an excess insurer that pays defense costs will frequently obtain a full recovery against the primary insurer on an equitable subrogation theory")).

As applicable here, the essential elements of an insured's claim for equitable subrogation are:

1.  The insured suffered a loss for which the defendant insurer is liable because the defendant insurer is legally responsible to the insured for the loss;
2.  The claimed loss was one for which the plaintiff was not primarily liable;
3.  The plaintiff insurer has compensated the insured in whole or in part for the same loss for which the defendant insurer is primarily liable;
4.  The plaintiff insurer has paid the claim of its insured to protect its own interest and not as a volunteer;
5.  The insured has an existing, assignable cause of action against the defendant insurer which the insured could have asserted for its own benefit had it not been compensated for its loss by the plaintiff insurer;
6.  The plaintiff insurer has suffered damages caused by the act or omission upon which the liability of the defendant insurer depends;
7.  Justice requires that the loss be entirely shifted from the insurer to the defendant, whose equitable position is inferior to that of the insurer; and
8.  The plaintiff insurer's damages are in a liquidated sum, generally the amount paid to the insured.

*Fireman's Fund*, 65 Cal.App.4th at 1292, 77 Cal.Rptr.2d at 303-304.

As to these elements, Peerless notes that:

1.  Kroeker would have been required to defend itself had Peerless not done so and "[p]ayment by the insurance company does not change the fact a loss has occurred." *Troost v. Estate of DeBoer*, 155 Cal.App.3d 289, 294, 202 Cal.Rptr. 47, 50 (1984);
2.  The March 9 order concluded that Progressive was Kroeker's primary insurer for the

underlying wrongful death action;

3. Peerless paid $62,885.05 in legal expenses to defend Kroeker in the underlying wrongful death action;

4. Peerless did not pay voluntarily Kroeker's defense costs in that Peerless: (a) tendered Kroeker's defense to Progressive; (b) advised Progressive that Peerless would seek reimbursement for Peerless' defense costs; and ( c ) was subject to Kroeker's potential bad faith claim is Peerless failed to defend Kroeker;

5. Had Peerless not defended Kroeker, Kroeker could have pursed bad faith claims against Progressive for its failure to defend Kroeker;

6. Peerless incurred damages of $62,885.05 which it paid to defend Kroeker although Progressive's policy had not been exhausted and Peerless' duty to defend Kroeker had not been invoked;

7. Progressive has an inferior equitable position to Peerless in that Progressive refused to defend Kroeker, unreasonably delayed to advise of Progressive's position, and has required Peerless to seek judicial intervention to recover its defense costs; and

8. Peerless' payment of $62,885.05 in defense costs is liquidated.

Progressive does not address meaningfully the equitable subrogation factors. Curiously, Progressive points to provisions of its policy and allegations in underlying action, although the linchpin of the March 9 order is application of section 11580.9, not policy interpretation. Without supporting explanation, Progressive claims inequity "to compel Progressive to reimburse Peerless for the cost of defending Kroeker against claims which were covered under the Peerless policy, but not under the Progressive policy." Awkwardly, Progressive suggests that "since an insurer's rights under a theory of equitable subrogation rise no higher than the insured's rights, an excess insurer cannot recover sums which the insured would be obligated to repay to the primary insurer." In equally awkward fashion, Progressive suggests that had it defended Kroeker in the underlying action, "Progressive would have had the right to recover the costs of defending those claims from Kroeker."

Peerless has properly applied the equitable subrogation elements to shift defense costs between Progressive as primary insurer and Peerless as excess insurer. Progressive has not meaningfully

challenged application of equitable subrogation to shift defense costs to it. Progressive relies on *Maryland Casualty*, 81 Cal.4th 1082, 1091 97 Cal.Rptr.2d 374, 379, which addressed "allocation of costs among several insurers *each of which had a duty to defend*" and "parallel 'complete' duties to defend," pursuant to insurance policy provisions. (Italics in original.) *Maryland Casualty* addressed "allocation of defense costs among insurers" under the equitable contribution doctrine, which apportions "costs among insurers that share the same level of liability on the same risk as to the same insured." *Maryland Casualty*, 81 Cal.App.4th at 1082, 1086, 1089, 97 Cal.Rptr.2d at 375, 377-378. In *Maryland Casualty*, the insurers seeking to recover defense costs conceded "that their policies were primary." *Maryland Casualty*, 81 Cal.App.4th at 1089, 97 Cal.Rptr.2d at 378.

Progressive's reliance on *Maryland Casualty* is misplaced. This is not a case of co-primary insurers. This Court has found that Peerless is the primary insurer and that Progressive is the excess insurer. This case does not address costs allocation between insurers with parallel duties to defend. Moreover, the obligations of the insurers in *Maryland Casualty* arose from policy provisions. Progressive and Peerless' obligations arise from statutory interpretation, specifically application of section 11580.9, which is intended to reduce litigation among insurers. Progressive's positions, if adopted, would promote litigation among insurers. Peerless correctly notes that it may recover defense costs from Progressive in that as an excess insurer, Peerless had no duty to defend Kroeker until exhaustion of Peerless' policy limits.

### *Equitable Indemnity*

Peerless further seeks defense costs recovery under the doctrine of equitable indemnity which applies when "one party pays a debt for which another is primarily liable and which in equity and good conscience should have been paid by the latter party." *United Servs. Auto Ass'n v. Alaska Ins. Co.*, 94 Cal.App.4th 638, 644-645, 114 Cal.Rptr.2d 449, 454-455 (2001). "Thus, for instance, an excess insurer who defends and indemnifies the insured following the primary insurer's wrongful refusal to do so may seek equitable indemnity from the primary insurer for amounts paid in defense and settlement of the claim." Croskey, Heeseman & Popik*, Cal. Practice Guide: Insurance Litigation* (2007) Multiple Insurers on Risk, § 8:65.1.

Peerless argues that "Progressive should, in equity and good conscience, reimburse Peerless for

the costs it incurred defending Kroeker in the Underlying Action." Progressive does not meaningfully challenge Peerless equitable indemnity claim. Peerless appears to question the genuineness of Progressive's defense costs and suggests a stay to rule on Peerless' motion pending discovery into the defense costs.

Progressive fails earnestly to challenge Peerless' equitable subrogation and indemnity claims. Peerless suggests nothing to discredit Peerless' defense costs, which Peerless authenticated and verified with sufficient declarations. As noted by Peerless, Progressive makes no attempt to claim Peerless defense costs are unreasonable. Equitable indemnity further supports that Peerless' recovery of defense costs from Progressive.

**CONCLUSION AND ORDER**

For the reasons discussed above, this Court:

1. GRANTS Peerless' motion to recover defense costs; and
2. ORDERS Progressive, no later than July 15, 2007, to reimburse Peerless $62,885.05 for defense costs incurred in the underlying action.

IT IS SO ORDERED.

**Dated:   June 7, 2007**                    /s/ Lawrence J. O'Neill
                                              UNITED STATES DISTRICT JUDGE